AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

FILED BY _____SM_____ D.C.

Jan 8, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

| | |
|---|---|
| United States of America<br>v.<br>Forrest William Hamm and<br>Wilton Vladimir Brown,<br>*Defendant(s)* | )<br>)<br>)  Case No.  26-mj-6003-PAB<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 2026__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Thomas Skura, FBI Special Agent
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by ~~Face Time~~ *in person*

Date: 1-8-2026

_____
*Judge's signature*

City and state:  Fort Lauderdale, Florida         Honorable Panayotta Augustin-Birch, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Thomas Skura, having been first duly sworn, do hereby depose and state as follows:

### AGENT BACKGROUND & INTRODUCTION

1.  I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and am currently assigned to the Miami Field Office. My duties involve the investigation of various violations of federal law, including narcotics violations and violent crimes. I have been an FBI SA since December 2020 and have received training at the FBI Academy in various aspects of criminal investigations, such as witness and investigative interviews, search and arrest warrant operations, physical and electronic surveillance, and confidential human sources.

2.  Prior to joining the FBI, I was employed by the United States Border Patrol as a Border Patrol Agent, and by the New York National Guard Counterdrug Task Force as an Intelligence Analyst assigned to the Drug Enforcement Administration ("DEA") and the New York State Police Community Narcotics Enforcement Team. During my career in law enforcement, I have specialized in narcotics investigations and received training from the FBI and DEA relating to the methods used by narcotics traffickers to import and distribute narcotics and the laundering of narcotics proceeds. I have been personally involved in numerous investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have seized cocaine, heroin, crystal methamphetamine, marijuana, and prescription pills. I have also debriefed defendants, informants, and witnesses who had personal knowledge of major narcotics trafficking organizations. I have conducted toll analyses, physical surveillance, and have participated in numerous narcotics investigations that utilized court authorized interceptions of wire and electronic communications. As a result of my experience and

training, I am familiar with the manner in which various types of illegal drugs are cultivated, manufactured, smuggled, distributed, and diverted, as well as the various methods used by narcotics traffickers to finance drug transactions and launder drug proceeds. I am also familiar with some of the code that narcotics traffickers use when discussing narcotics transactions. I have received training and experience in the preparation and execution of search warrants authorizing the search of physical locations, including private residences, for evidence of unlawful narcotics trafficking.

3. As a Special Agent of the FBI, I am authorized to conduct investigations into criminal violations of the laws of the United States, including narcotics offenses, specifically conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

4. This affidavit is submitted in support of a complaint for the arrest of Forrest William HAMM and Wilton Vladimir BROWN for conspiring to possess with intent to distribute a controlled substance, that is, five (5) kilograms or more of mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

5. I am familiar with the facts and circumstances of the investigation based on my personal participation in the investigation and my communications with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included details of every aspect of the investigation.

## PROBABLE CAUSE

6. Law enforcement is investigating a drug trafficking organization that is importing and distributing cocaine in the Southern District of Florida. To date, the investigation has involved the use of surveillance, a Confidential Source ("CS"), Cooperating Defendant ("CD"), an undercover officer ("UC"), subpoenas, toll analysis, pen registers, Title-III wiretaps, and evidence purchases. The investigation has revealed that HAMM and BROWN are members of a drug trafficking organization that distributes narcotics within the Southern District of Florida.

7. Prior to January 7, 2026, a CD, a UC, and HAMM, had agreed to deal involving five (5) kilograms of cocaine in exchange for $16,000. On January 7, 2026, the day agreed upon by all parties to complete the transaction, HAMM was surveilled prior to agreeing to meet the CD at the Home Depot, located at 3183 SW 160th Ave, Miramar, Broward County, Florida (hereinafter "Home Depot") in order to conduct the transaction for 5 kilograms of cocaine. During this time, HAMM was observed driving in tandem with BROWN prior to reaching the Home Depot.

8. Upon arriving at the Home Depot, HAMM met with the CD and UC in order to discuss the transaction. At this time, HAMM requested to count the money for the first kilogram of cocaine before retrieving it. Following this, HAMM was driven by the CD to meet with BROWN, who was parked in the vicinity of Chase Bank, located at 3221 SW 160th Ave, Miramar, Florida. After this, HAMM returned with the CD to meet the UC at the Home Depot, where one (1) kilogram of cocaine was turned over to the UC. At this time, the UC and HAMM tried negotiating for the additional four (4) kilograms of cocaine. It was discovered that HAMM and BROWN wanted to see more money and do one (1) kilogram transactions at a time. After failing to reach a deal between HAMM and the UC, law enforcement closed in on the UC and HAMM

in order to effectuate an arrest. At the same time, BROWN was observed departing the Chipotle, located at 3231 SW 160th Ave, Miramar, Florida. At this time, law enforcement followed BROWN out of the plaza and eventually onto Miramar Parkway where Florida Highway Patrol (FHP) engaged in surveillance in order to effectuate a traffic stop. At this time, BROWN attempted to flee FHP and lost control of his vehicle attempting to enter Florida Interstate-75 South at Miramar Parkway. At this time, BROWN was taken into custody and FHP conducted a K9 sweep of BROWN's vehicle. The FHP K9 alerted to the presence of narcotics before a more thorough search was conducted. It was uncovered that the additional four (4) kilograms were in the trunk of BROWN's vehicle. It should be noted that these kilograms of cocaine have identical markings to the one (1) kilogram that was sold to the UC. It was also discovered that the funds that law enforcement provided to facilitate the illicit transaction – totaling $16,000 – was recovered from the center console of BROWN's vehicle.

9. Following the arrest and debrief of HAMM, HAMM denied having a lawyer and wished to speak with law enforcement. On a recorded statement, HAMM admitted to his involvement in the conspiracy to sell five (5) kilograms of cocaine to the CD and the CD's "Customer", known as the UC. HAMM described the entire transaction in detail and admitted BROWN's involvement.

[INTENTIONALLY LEFT BLANK]

10.    Based on information contained within this affidavit, I respectfully submit there is probable cause for the issuance of a criminal complaint charging Forrest William HAMM and Wilton Vladimir BROWN with conspiracy to possess with intent to distribute a controlled substance, that is, five (5) kilograms or more of mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(l), all in violation of Title 21, United States Code, Section 846.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
Thomas Skura
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _in person_ on this __8__ day of January 2026.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE

5